# In the United States Court of Federal Claims

No. 02-1467 V

(Filed: June 18, 2010)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **JOHNATHAN FRIEDMAN,** | * |
| Petitioner, | * Vaccine Act; Motion for Review; |
| | * Attorneys' Fees; Partial Affirmance |
| | * of Special Master's Award; Forum |
| v. | * Rate; *Laffey* Matrix; *Davis* |
| | * Exception; Profitability; *Avera*; |
| **SECRETARY OF HEALTH AND** | * *Masias*; Interim Fees; "Fees for |
| **HUMAN SERVICES,** | * Fees"; Certification to Federal |
| | * Circuit. |
| Respondent. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Robert T. Moxley*, Robert T. Moxley, P.C., Cheyenne, WY, Counsel of Record for Petitioner.

*Ann D. Martin*, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., Counsel of Record for Respondent, with whom were *Catharine E. Reeves*, Assistant Director, *Mark W. Rogers*, Deputy Director, and *Timothy P. Garren*, Director, Torts Branch, and *Tony West*, Assistant Attorney General, United States Department of Justice.

## OPINION ON MOTION FOR REVIEW

**Damich, J.**

On January 4, 2010, Petitioner filed a Motion for Review of the decision of the Special Master awarding Petitioner attorneys' fees and costs in the underlying action. In conjunction with the motion for review, Petitioner has also moved for "summary affirmance," in effect payment of interim fees, of the undisputed portion of the fees awarded Petitioner below and for "de novo determination of unadjudicated claims" (that is, fees for litigating the fees award itself) as well as for certification of certain questions to the United States Court of Appeals for the Federal Circuit ("the Federal Circuit") regarding legal issues relating to attorneys' fees.

For the reasons stated herein, Petitioner's motion for review is denied, as are his motions for summary affirmance and de novo determination of unadjudicated claims and for certification to the Federal Circuit.

I.  Procedural Background[1]

In the underlying entitlement action, in October 2008, after the parties reached, and filed, a stipulated settlement agreement, Petitioner was awarded a lump sum of $50,000 for injuries related to a Hepatitis B vaccination.  During the course of the underlying action, Petitioner had filed a motion to substitute counsel, which was granted on December 14, 2006.  Mr. Robert T. Moxley of the firm of Robert T. Moxley, P.C., of Cheyenne, Wyoming, then succeeded Mr. Ronald Craig Homer of the firm of Conway, Homer & Chin-Caplan, P.C., of Boston, Massachusetts ("Conway"), in the representation of Petitioner.

On March 31, 2009, Petitioner filed a petition for reimbursement of attorneys' fees and costs, in the amount of $27,469.63.  This amount included attorneys' fees for the services of Robert T. Moxley at hourly rates of $425 in 2006/07, $440 in 2007/08, and $465 in 2008/09, based on the so-called *Laffey* Matrix.[2]  It also included paralegal fees for the services of Mr. Moxley's paralegal at the rate of $100 per hour, as well as miscellaneous costs, including $1,080 for the expert services of Alan S. Levin, M.D., J.D.

On April 24, 2009, Respondent (or "the Government") filed a response in opposition to the application for attorneys' fees and costs, objecting to Mr. Moxley's proposed hourly rate, the number of hours for which he proposed reimbursement, the hourly rate of his paralegal, and the hourly rate of Dr. Levin.

Petitioner's reply was stayed until July 6, 2009, to allow the Special Master here to issue a decision on reconsideration relating to attorneys' fees issues before the same Special Master in another vaccine case, *Masias v. Sec'y of Health and Human Servs.*, No. 99-697 V.  In both this case and in *Masias*, Mr. Moxley is counsel of record, and the two cases share largely similar issues as to reasonable attorney reimbursement rates: to wit, whether the forum rate for the District of Columbia, or an exception to the forum rate, should apply to Mr. Moxley's application for attorneys' fees and costs in the circumstances of the two actions and, if the forum rate for the District was not the appropriate standard, what is the reasonable rate for Mr. Moxley in the forum of his practice in Cheyenne, Wyoming.   The *Masias* decision was issued on June 12, 2009.  *Masias v. Sec'y of Health and Human Servs.*, No. 99-697 V, 2009 WL 1838979 (Fed. Cl. Spec. Mstr. June 12, 2009) ("*Masias I*").  In that 67-page analysis and decision, the Special Master determined that the petitioner was not entitled to forum rates for the District of Columbia and awarded Mr. Moxley reimbursement for attorneys' fees based on the forum in Cheyenne at rates ranging from $160 to $220 per hour.

Petitioner's reply to the Government's opposition to his proposed attorneys' fees request was filed on July 9, 2009.  In his reply, Petitioner disputed Respondent's objections and attached

---

[1] These facts are drawn from the parties' filings and the special master's opinion and are undisputed unless otherwise noted.

[2] *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part*, *rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).  The *Laffey* Matrix, a calculation of attorneys' fees at the forum rate of the District of Columbia, has been adopted by the U.S. Attorney's Office for the District and  is updated annually to reflect changes in the Consumer Price Index.  It is widely, although not exclusively, utilized within the D.C. Circuit.  *See* Resp't's Resp. to Pet'r's Reply, Ex. E (Van Horn Aff.).

as an exhibit an affidavit from an attorney, Michael J. Snider, of Baltimore, Maryland, in support of Petitioner's rate position in the *Masias* litigation (and incorporated in the case at bar).  In addition, Petitioner suggested in a footnote and in his conclusion, but did not move, that the Special Master consider payment of an "irreducible minimum" portion of his fees request in the form of interim fees and that the Special Master's final decisions on fees be stayed until the Federal Circuit resolved an anticipated appeal in *Masias*.  Pet'r's Reply to Resp't's Resp. to Application at 2 n.2.  Petitioner also noted in a footnote that the Conway firm had "separately filed an application to recover its portion of attorneys' fees and costs in this case" (although no such application appeared on the case docket).  *Id.* at 1 n.1.

Respondent was allowed to file in effect a sur-response to Petitioner's reply.  In its filing, Respondent submitted affidavits from an Assistant United States Attorney for the District of Columbia familiar with the utilization of the *Laffey* Matrix, and from counsel for plaintiff's law firm in the *Laffey* litigation, in support of the Government's position on the attorneys' fees rate issue.  Respondent argued that "Petitioner's Reply does not offer any persuasive reasons to justify a departure from the recent conclusions about Mr. Moxley's hourly rate that the special master reached in *Masias*."  Resp't's Resp. to Pet'r's Reply at 2.

On October 6, 2009, Petitioner filed a formal Motion for Interim Award of Fees and Stay of Fees Decision Pending Dispositive Appeals, in which he noted that two motions for review were then pending before the Court of Federal Claims (in *Masias* and in *Avila v. Sec'y of Health and Human Servs.*, No. 5-685 V) which involved Petitioner's counsel's appropriate hourly rate. Petitioner asked that the "adjudication of the Laffey Matrix issues" be stayed and that appropriate hourly fees be awarded on an interim basis.  Pet'r's Mot. for Interim Fees at 2. Respondent did not oppose a stay, but argued that Petitioner had made no showing of "undue hardship" warranting interim fees, as the Federal Circuit had specified in *Avera v. Sec'y of Health and Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008), and that there was no authority to award interim fees as "costs" under the Vaccine Act.  Resp't's Resp. to Pet'r's Mot. for Interim Fees at 2.

The Special Master issued his decision on attorneys' fees and costs on October 21, 2009. In his decision, the Special Master reaffirmed the hourly rates that he applied to Mr. Moxley in the *Masias* litigation, explaining why Petitioner's additional arguments, including affidavits from Mr. Snider, et al., and arguments regarding profitability and the rate applied to Mr. Moxley by a different special master in *Avila*, were unpersuasive.  Depending on the time period in which Mr. Moxley's work was performed, he was awarded reimbursement at rates ranging from $210 to $220 per hour.  The number of hours proposed for reimbursement was reduced by only 2.0 hours, his request for paralegal reimbursement was awarded in full, but the hourly rate of Dr. Levine was reduced from $350 to $300.  The total amount of attorneys' fees and costs awarded was $14,763.13.  The Special Master also denied Petitioner's motion for an award of interim fees or for a stay of the attorneys' fee decision.  He distinguished the circumstances that justified an award of interim fees in *Masias*, noted that his decision on Petitioner's motion for attorneys' fees and costs was largely complete by the time Petitioner had formally moved for interim fees and a stay, and suggested that a motion for review in this case "may give another judge at the Court of Federal Claims . . . an opportunity to present his or her views" before the Federal Circuit resolves the *Laffey* Matrix issues.  Spec. Mstr.'s Op., Oct. 21, 2009 at 14.

3

On October 23, 2009, Petitioner filed a motion for reconsideration.  In his motion, Petitioner observed that the decision of the Special Master had not addressed the application of the Conway firm for its attorneys' fees and costs, which allegedly had been served by mail on May 15, 2008, complained that the decision of the Special Master was issued "precipitously" and "unnecessarily," and moved for an additional award of attorneys' fees and costs in reimbursement of the litigation over the fees itself ("supplemental fees").  Pet'r's Mot. for Reconsideration at 2.  Petitioner further sought reconsideration of the decision regarding Mr. Moxley's hourly rate, the denial of interim fees, and the denial of his request for a stay.  The Special Master granted reconsideration solely on the issue of the fee application of the Conway firm.

On November 10, 2009, Petitioner filed the Conway fee application in a Notice of Filing and a "Renewed Motion for Appropriate Relief," in which, inter alia, he objected to the Special Master's denial of reconsideration regarding Mr. Moxley's application for supplemental fees.  In Respondent's response on November 13, the Government did not interpose any objection to the fee application of the Conway firm.

The Special Master issued his revised, final decision on attorneys' fees and costs in this matter on December 4, 2009.  *Friedman v. Sec'y of Health and Human Servs.*, No. 02-1467 V, 2009 WL 4975267 (Fed. Cl. Spec. Mstr. Dec. 4, 2009) ("Decision").  He awarded the Conway firm the full $15,182.60 that it requested; he reaffirmed the total amount he had previously awarded Petitioner for Mr. Moxley's fees and costs in the original, October 21, fees decision, but also added one hour, at the rate of $220 per hour, to the hours claimed by Mr. Moxley in order to account for his time to file the motion for reconsideration and then to file the Conway firm bill.  He denied any additional award of supplemental fees for litigating the fees issue itself, denied the payment of interim fees, and denied the renewed motion to stay.

II. Standard of Review

The Court of Federal Claims may set aside a decision of a special master "only if the special master's fact findings are arbitrary and capricious, its legal conclusions are not in accordance with law, or its discretionary rulings are an abuse of discretion."  *Hazlehurst v. Sec'y of Health and Human Servs.*, 604 F.3d 1343, 1348-49 (Fed. Cir. 2010); *Hall v. Sec'y of Health and Human Servs.*, No. 02-1052 V, 2010 WL 1840837 at *4 (Fed. Cl. May 5, 2010); 42 U.S.C. § 300aa-12(e)(2)(B).  The determination of attorneys' fees and costs are considered to be "within the discretion of a [special master] and are entitled to deference."  *Saxton v. Sec'y of Health and Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993).  It is not expected that an attorneys' fees request should require another, extensive proceeding and a special master is thus "given reasonably broad discretion when calculating such awards."  *Wasson by Wasson v. Sec'y of Health and Human Servs.*, 24 Cl. Ct. 482, 483 (1991).

"If the special master has considered the relevant evidence of record, drawn plausible inferences, and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate."  *Hines v. Sec'y of Health and Human Servs.*, 940 F.2d 1518, 1528

(Fed. Cir. 1991). Moreover, in the vaccine program, the special masters "are entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

III. The Special Master's Decision and Petitioner's Motion for Review

In his decision of December 4, 2009, the Special Master noted that "[t]he predominant issue is whether Mr. Moxley should be compensated at an hourly rate established by the *Laffey* matrix." Decision at *3. He referenced his June 12, 2009, decision in *Masias* that Mr. Moxley was not entitled to compensation at *Laffey* Matrix rates and observed that "[r]epeating the undersigned's analysis from *Masias* is not necessary." *Id.* He did, however, explain why affidavits submitted by Petitioner's father and by Baltimore, Maryland attorney Michael J. Snider in this case did not persuade him to change the conclusions he reached in *Masias I* regarding the reasonable hourly rate he found appropriate for Mr. Moxley's work in vaccine program cases. He also addressed two additional arguments by Petitioner in support of Mr. Moxley's proposed higher rates. The first argument concerned profitability. As was similarly argued in *Masias I*, Petitioner here averred that it is error to award Mr. Moxley an hourly rate that is inadequate to allow him to earn a profit. Petitioner also argued that the $220 maximum hourly rate awarded Mr. Moxley in *Masias I* stands in conflict with the rate awarded (by a different special master) for Mr. Moxley's work in yet another vaccine case, *Avila v. Sec'y of Health and Human Servs.*, No. 05-685 V, 2009 WL 2033063 (Fed. Cl. Spec. Mstr. June 26, 2009).

The Special Master's decision in *Masias* is thus the explicit foundation for this review. Inasmuch as both Petitioner and Respondent incorporate the *Masias I* decision in their argumentation in this case, both in their briefs before the Special Master and in their briefs on this Motion for Review, this Court's decision on Petitioner's Motion for Review implicitly encompasses a review of the Special Master's decision in *Masias* despite the fact that another judge of the United States Court of Federal Claims has already formally ruled thereon, affirming the Special Master's decision. *Masias v. Sec'y of Health and Human Servs.*, No. 99-697 V, 2009 WL 1838979, *aff'd* (Fed. Cl. Dec. 10, 2009) ("*Masias II*"), *appeal docketed*, No. 10-5077 (Fed. Cir. Feb. 17, 2010).

IV. Discussion

   A. Motion for Review

Upon its review of the decision of a special master, the Court may thereafter:

   (A) uphold the findings of fact and conclusions of law of the
       special master and sustain the special master's decision,

   (B) set aside any findings of fact or conclusion of law of the special
       master found to be arbitrary, capricious, an abuse of discretion,

>> or otherwise not in accordance with law and issue its own
>> findings of fact and conclusions of law, or
>
> (C) remand the petition to the special master for further action in
> accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2).

By virtue of the judgment entered therefore on Petitioner's behalf, as a prevailing party, Petitioner is entitled by statute to "reasonable" attorneys' fees and costs. 42 U.S.C. § 300aa-12(e)(1)(A). The process of determining the proper attorneys' fee award begins with the "lodestar approach," in which a reasonable hourly rate is multiplied by a determination of a reasonable number of hours expended. *Avera*, 515 F.3d at 1347-48 (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The reasonable hourly rate is derived from the "prevailing market rate," defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11. The burden is on the fee applicant to demonstrate satisfactory evidence of the reasonable hourly rate. *Id.*

The Federal Circuit held in *Avera* that, in general, the prevailing market rate is based on the rate of the forum court rather than the rate of the geographic location where the attorney is based. 515 F.3d at 1349. There is a significant exception, however, where the bulk of the attorney's work is done outside the jurisdiction of the court and where there is a "very significant difference" in compensation favoring the District of Columbia forum compared to that of the non-D.C. locale. *Id.*[3] In *Masias*, as in this case, there is no disagreement that the bulk of Mr. Moxley's work was performed in the locale of his law practice in Cheyenne, Wyoming.

In *Masias I*, the Special Master's methodology was first to determine the hourly rate in the local area. He reviewed case law in the Court of Federal Claims analyzing other legal work similar to the work performed by attorneys for petitioners in vaccine program claims. 2009 WL 1838979 at *4. He considered the petitioner's submission of an affidavit from a Cheyenne attorney with experience in complex federal litigation who proffered his knowledge of the rates such work commanded in the area. *Id.* at *5. He also reviewed the history of awards of hourly rates to attorneys in Cheyenne for work in the vaccine program as well as that of awards for work outside the vaccine program. *Id.* at *6. He compared the work of local attorneys affiliated with a national firm with multiple offices to Mr. Moxley's work in a small firm with a single location. He noted Mr. Moxley's own statement that he charges $250 to local clients for non-vaccine work. *Id.* at *7. He also noted that the amended judgment for fees in *Avera* awarded Mr. Moxley the rate of $250 per hour. *Id.* The Special Master concluded that "[c]ases in the [Vaccine] Program and cases from Wyoming related to setting hourly rates conclusively indicate that the reasonable hourly rate for Cheyenne, Wyoming is between $200 and $250 per hour." *Id.* Using a methodology similar to that of the *Laffey* Matrix for the District of Columbia, the Special Master determined that "the starting point for indexing Mr. Moxley's rate is $200 per hour in 2004." *Id.* at *9. He also explained why he was not persuaded in favor of a higher local rate by the affidavits of Wyoming attorneys, Messrs. Evans and Schultz. *Id.* at *10. He

---

[3] This exception, also known as the "*Davis* Exception," is based on the decision in *Davis County Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755 (D.C. Cir. 1999).

6

explained why Mr. Moxley's rate of $250 for criminal defense work in Wyoming did not necessarily justify the same rate in vaccine litigation. *Id.* at *12. Based on his consideration of a leading decision of the Wyoming Supreme Court setting $200 as a reasonable hourly rate, historical information regarding compensation for vaccine work by Wyoming attorneys, Mr. Moxley's $250 rate for criminal work, and the Federal Circuit's ruling in *Avera* that $200 was a reasonable rate for Mr. Moxley, the Special Master determined the reasonable hourly rate for Mr. Moxley in 2008 to be $220 per hour. *Id.*

In determining the forum rate for the District of Columbia, the Special Master extensively reviewed the history of the *Laffey* litigation. He observed that, while reliance on the *Laffey* Matrix within the D.C. Circuit was widespread, it was not universal. *Id.* at *15. He discussed the comparison of vaccine cases with other civil litigation in the forum, such as civil rights, commercial litigation, and shareholder derivative suits, as well as medical malpractice, personal injury, and products liability. *Id.* at *16. He considered persuasive the decision in *Rupert v. Sec'y of Health and Human Servs.*, 55 Fed. Cl. 293, 304 (2003) ("*Rupert IV*") supporting a finding that " 'the most comparable practice to Vaccine Act work is complex civil matters, not plaintiff's personal injury, medical malpractice, and personal liability work.'" *Id.* For the reason that "some types of Federal litigation are not as complex as other federal litigation," he did not accept the *Laffey* Matrix within the D.C. Circuit as the "final word" on the topic of hourly rates. *Id.* at *18.

Of note, the Special Master extensively examined the difficulties in determining whether any particular type of litigation is "complex," taking into consideration the affidavits of several Vaccine Program litigators supporting the assertion that vaccine practice constitutes complex litigation. He discussed aspects of vaccine practice that suggest complexity, such as advocacy that often requires a familiarity with medical concepts and issues, and aspects of the Vaccine Program that suggest a lessening of the advocate's burden, such as the less litigious and less adversarial nature of the practice. *Id.* at *20-22. He also noted that Mr. Masias, like Petitioner here, was not required to show negligence, design defect, or failure to warn, as would have been required of a plaintiff in a common law tort action. Thus, he found that "litigation in the Vaccine Program is simpler than the 'complex federal litigation'" upon which the *Laffey* Matrix is based. *Id.* at *23. Finally, in determining the forum rate for vaccine practice, the Special Master recognized the rates awarded certain vaccine practitioners located in the near suburbs and in Richmond, Virginia, as well as the rate awarded outside the *Laffey* Matrix by the U.S. District Court for the District of Columbia for "straightforward" practice in a matter based on the Individuals with Disabilities Education Improvement Act of 2004. *Id.* at *24. He concluded that "a reasonable range for attorneys with ten or more years of experience providing services in the Vaccine Program in Washington, D.C. is $250 to $375 per hour." *Id.* at *25. He found that the rate for Mr. Moxley, if he actually practiced in Washington, D.C., would be near, "but not at the very top" of the forum rate, and would be $350 per hour. *Id.*

Because Mr. Moxley's work on the *Masias* case did not take place within the confines of Washington, D.C., the Special Master then proceeded, following the guidance of the Federal Circuit in *Avera* regarding the *Davis* Exception, to evaluate whether there was "a very significant difference" between the forum rate and the local rate. The forum rate that he determined would be appropriate to Mr. Moxley, $350 per hour, was 59% greater than the $220 local rate he found

7

was appropriate. *Id.* at *26. The Special Master traced other cases comparing local rates and forum rates to determine what constitutes a significant difference. He also reviewed the policy behind fee-shifting statutes, including avoiding "windfalls inconsistent with congressional intent." *Id.* (citing *Avera*, 515 F.3d at 1349 (quoting *Davis*, 169 F.3d at 759-60)). He examined but was unpersuaded by the affidavits submitted in support of awarding forum rates to Mr. Moxley. *Id.* at *28. The Special Master noted the increasing number of attorneys participating in the Vaccine Program, concluding that "[t]his increase in the number of attorneys who regularly represent petitioners also suggests that the compensation is reasonable." *Id.* at *29. He also discounted the argument that "profitability of a law firm" should govern the rate award. *Id.* He noted the observation of the Supreme Court that fee-shifting statues "are not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986).

Having reviewed the decision of the Special Master, *Masias I*, and the decision of Court of Federal Claims in *Masias II*, affirming the decision of the Special Master, this Court finds similarly that the Special Master's application of the *Davis* Exception in this case was sound and certainly not arbitrary, capricious, or an abuse of discretion. Nor was the Special Master arbitrary or capricious in his meticulous methodology determining the appropriate forum rate and appropriate local rates for Mr. Moxley's work. As noted in *Masias II*, the Special Master's ruling reflected a "conscientious and thoughtful record review in which relevant conclusions" were fully justified by the evidence, it was "consistent with the intent of Congress in establishing the [Vaccine] Program," and it was explained "fully and persuasively." *Masias II*, No. 99-697 V (Fed. Cl. Dec. 10, 2009) at 2.

In the instant litigation, the Special Master also addressed two additional affidavits presented by Petitioner to bolster the argument in support of higher fees for Mr. Moxley. Decision at *3-*7. The first affidavit was from Petitioner's father, Mark Friedman, who was initially named as petitioner because his son was not yet of legal age. Mr. Mark Friedman's affidavit addressed his difficulties in finding an attorney and asserted that Mr. Moxley's services were of the same or greater value to him and his son as the services rendered by the Conway firm. The Special Master did not, however, find that the Friedman affidavit provided useful, effective, or pertinent evidence with regard to the process for determining a reasonable attorney rate, pursuant to the guidance provided by the Federal Circuit in *Avera*. It did not address the appropriate forum rate for the District of Columbia nor, per the *Davis* Exception, whether there was a significant difference between the appropriate local rate and the forum rate. Similarly, it was not germane to the assessment of the appropriate local rate in Cheyenne, Wyoming. *Id.* at *4. The Special Master concluded that "Mr. Friedman's affidavit does not present any information relevant to the question of how to set Mr. Moxley's hourly rate." *Id.* at *5.

The Special Master also considered the affidavit of Baltimore, Maryland, attorney Michael J. Snider. Mr. Snider, based on several years of legal practice in the Baltimore/Washington, D.C. area, in the field of federal employment law, asserted that he never encountered any inquiry into the complexity of a case in establishing hourly rates of reimbursement, that a top rate of $375 per hour would not be considered reasonable for any

experienced attorney in the area, and that he believed a "market rate" inherently is one that allows for a reasonable profit. *Id.* at \*5-\*7. Because Mr. Snider lacked any experience in the Vaccine Program itself and because the Special Master had already determined that Program practice differed from other litigation, the Special Master was not persuaded by Mr. Snider's affidavit that his analysis of the forum rate in *Masias* was flawed. The Special Master also noted that, to the extent that the appropriate forum rate for Vaccine Practice was higher than the $375 maximum previously determined, it would signify an ever greater difference between the forum rate and the local rate in Cheyenne, Wyoming. The consequence, per the *Davis* Exception, would work that much more so to the disadvantage of Mr. Moxley's quest for a higher rate of reimbursement. *Id.* at \*7.

This Court finds that the Special Master's consideration of the affidavits of Mr. Friedman and Mr. Snider was appropriate and reasonable. There is nothing in the Special Master's review of these affidavits that suggests arbitrariness, capriciousness, or abuse of discretion.

In his motion for review, Petitioner notes several underlying objections to the Special Master's decision. First, he contests the Special Master's finding that "[r]eference to profitability is fundamentally flawed." *Id.* at \*7. The Special Master rejected Petitioner's contention that the hourly rate established in *Masias* for Mr. Moxley was improper because it did not allow Mr. Moxley to earn a profit. He observed that a "situation in which attorneys earn revenue for Washington, D.C., but pay costs for Cheyenne, Wyoming is highly likely to produce a windfall for the attorney." *Id.* Petitioner argues to the contrary that the Vaccine Program is a "national market," rather than a local, market, and as such "any finding that Wyoming in general is the 'relevant community'" renders "unreasonable" the award of "generic 'local rates.'" Pet'r's Mem. of Objections at 13, 18.

In a related objection, Petitioner complains that the Special Master's determination, taken from his analysis in *Masias I*, that Program work differs from other types of litigation in the extent of its complexity, was arbitrary and capricious. According to Petitioner, "[t]he intellectual foundation of *Masias* is complete denial of the 'complexity' of Program practice." *Id.* at 27. In support, Petitioner cites to several decisions in which other special masters have found Program practice to be complex, such as *Monteverdi v. Sec'y of Health and Human Servs.*, 19 Cl. Ct. 409, 434 (1990) (despite relaxed standards of causation and eased rules of evidence, "issues under the Act are nonetheless complex."); *Erickson v. Sec'y of Health and Human Servs.*, No. 96-361 V, 1999 WL 1268149 at \*4 (Fed. Cl. Spec. Mstr. Dec. 10, 1999) ("the argument that Program litigation is uncomplicated and requires less experience or preparation than traditional tort litigation is no longer valid . . . ."); *Rupert v. Sec'y of Health and Human Servs.*, No. 99-0774 V, 2002 WL 31441211, at \*3 n.3 (Fed. Cl. Spec. Mstr. Aug. 26, 2002) ("*Rupert III*") (the contention that the Program is "rudimentary" is "offensive" to petitioners, petitioners' attorneys, and special masters); and *Walmsley v. Sec'y of Health and Human Servs.*, No. 06-0270 V, 2009 WL 4064105 at \*12 (Fed. Cl. Spec. Mstr. Nov. 6, 2009) ("it would be fatuous to differentiate Program cases from cases where *Laffey* is applied based purely on a lack of complexity . . . .").

Nevertheless, the Special Master here was tasked with determining the appropriate rate of compensation for *this* Petitioner's counsel based on the work in *this* case. He conscientiously examined precedent and evidence for determining the forum rate for the District of Columbia; he

performed the same analysis for the local rate in Cheyenne.  He gave sound and competent reasons for his conclusions under the particular facts of this action.  While the determinations of other special masters about reasonable hourly compensation are relevant to this inquiry, they are not binding.  *See, e.g., Rodriguez v. Sec'y of Health and Human Servs.*, No. 06-559 V, 2009 WL 2568468 at *23 (Fed. Cl. Spec. Mstr. July 27, 2009).  He had also noted in the *Masias I* decision, 2009 WL 1838979 at *4 , that the Federal Circuit upheld an award of almost the same hourly rate ($200 per hour compared to $220 per hour here) to Mr. Moxley in its *Avera* decision.  This Court finds that the Special Master provided a rational basis for his decision.  Given the deference due to the decisions of special masters and the broad discretion to which they are entitled in fee determinations, there is no valid reason to overturn this decision on review.

In Petitioner's other principal objection, he takes direct aim at the decision of the Federal Circuit in *Avera* encompassing the *Davis* Exception: "The '*Davis* Exception' should not apply to Petitioner's counsel, neither as a matter of law, nor as a matter of fact."  Pet'r's Mem. of Objections at 31.  Petitioner argues that the *Avera* Court "hung its hat on policy considerations" in affirming the *Davis* Exception.  *Id.* at 32.  Subsequent to *Avera*, however, he argues, the decision of the United States Supreme Court in *Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571 (2008), "rejected the process whereby *Avera* arrives at the *Davis* exception, that is, invoking 'legislative intent' in the effort to prevent so-called 'windfalls.'"  *Id.* at 33 (footnote omitted).

This Court, however, is obligated to follow the binding precedent of the Court of Appeals for the Federal Circuit.  As noted in the decision in this court denying petitioner's motion for review in *Masias*:

> This court and its special masters are bound by decisions issued by the Court of Appeals for the Federal Circuit and the Supreme Court.  We do not make policy; we do not make new laws.  Petitioner asks the court to achieve his pragmatic ends by fiat.  This is the same approach that he charged the special master with attempting; that is, making policy according to his own 'subjective view' of the manner in which attorneys in the Program should be compensated.

*Masias II*, No. 99-697 V (Fed. Cl. Dec. 10, 2009) at 10; *accord Coltec Industries, Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims.").

This Court finds persuasive the analysis of the same argument regarding the Supreme Court's *Richlin* decision that was made in another Vaccine Program case regarding attorneys' fee compensation.  *See Hall*, 2010 WL 1840837 (Fed. Cl. May 5, 2010).  There, the court observed that there were only two narrow exceptions to the rule that the Court of Federal Claims may not deviate from the precedent of the Federal Circuit: if the circuit's precedent is expressly overridden by statute or by a subsequent decision of the Supreme Court.  *Id.* at *7 (citing *Strickland v. United States*, 225 F.3d 1335, 1338 n.3 (Fed. Cir. 2005)).  The court found nothing in *Richlin* overruling *Avera*, expressly or otherwise.  *Id.* at *8.  *Richlin* directed that under the

Equal Access to Justice Act (EAJA) a prevailing party is entitled to recover paralegal fees at prevailing market rates rather than merely at the lower, actual cost of paralegal services to the party's counsel. Petitioner here seems to be extrapolating that *Richlin* stands also for the proposition that, if attorneys' fees are paid at market rates, the policy behind *Avera*'s affirmation of the *Davis* Exception – of avoiding windfalls based on D.C. rates for work not performed in D.C. – is no longer valid. Unfortunately for Petitioner, neither *Richlin*, nor *Missouri v. Jenkins*, 491 U.S. 274 (1989), to which *Richlin* parenthetically refers, repudiates the policy against windfall awards of attorneys' fees. As Respondent notes, "*Avera*'s application of the *Davis* exception focuses on which of two prevailing market rates – the local rate or the forum rate – should apply in a given Vaccine Act" case. Resp't's Resp. to Pet'r's Mot. for Review at 13 n.8. The Special Master's application of the *Davis* Exception therefore was neither arbitrary nor capricious.

       B. Interim Fees and De Novo Determination of Fees for Fees Claim

    1. Interim Fees

Petitioner also seeks summary affirmance, in effect an award of interim fees, of the amount that the Special Master did award, while the motion for review (seeking a higher hourly rate) is pending and pending any further appeal to the Federal Circuit. In *Avera*, the Court of Appeals held that "[t]here is nothing in the Vaccine Act that prohibits the award of interim fees." 515 F.3d at 1351. The court noted that delaying a fee award until the conclusion of the litigation can work a "substantial hardship" on plaintiffs and their counsel and helps to ensure that vaccine injury claimants have a competent bar "readily available" to help pursue their claims. *Id.* at 1352. Thus, Petitioner argues, the fees already adjudicated by the Special Master are "liquidated" and represent a "vested property interest." Pet'r's Mot. for Summ. Affirm. at 3. If not paid in the interim, they are certainly not "readily available" and the Vaccine Program is therefore "hold[ing] hostage the cash flow and professional livelihood represented by unpaid fees earned years in the past." *Id.* Under the particular facts of *Avera*, however, the appellate court affirmed the denial of interim fees because the petitioner had not made a showing sufficient to justify the award of interim fees pending appeal. Specifically, they had not demonstrated "undue hardship" in that the amount of the fees at issue was not substantial, they had not employed any experts (whose fees were awaiting payment), and there was only a short delay pending the appeal. *Avera*, 515 F.3d at 1352.

Respondent here opposes any such affirmance, arguing that Petitioner's characterization of the award by the Special Master as a "vested property right," Pet'r's Mot. for Summ. Affirm. at 8, is inaccurate and contrary to the Act. Resp't's Resp. to Pet'r's Mot. for Summ. Affirm. at 5-6. "During the pendency of this Court's review, judgment on the final decision does not enter. Without judgment, payment on the underlying decision cannot be made." *Id.* at 6. Accordingly, there is no authority for the Court of Federal Claims to "partially affirm" an award made below such that an "immediate, interim payment" can be made to Petitioner. *Id.* To the extent that Petitioner is asking for a separate "affirmance" of part of the award made by the Special Master, this Court finds that it lacks such authority. Respondent correctly notes that, upon a motion for review, the Vaccine Act provides authorization for the Court of Federal Claims either to: 1) uphold the findings of fact and conclusions of law of the special master and sustain the special

11

master's decision, 2) set aside any such findings found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings, or 3) remand to the special master for further action. 42 U.S.C. § 300aa-12(e)(2). This Court has herein, *supra*, sustained the attorneys' fees and costs judgment of the Special Master. Petitioner may accept that decision, forego an appeal to the Federal Circuit, and seek payment on the amount awarded. This Court has no authority to split its judgment into two parts, one of which Petitioner can further appeal and one of which it can accept for immediate payment.[4] As Respondent notes, "petitioner does not identify any source for this Court's authority to partially affirm a special master's decision in a *Vaccine Act* case." Resp't's Resp. to Pet'r's Mot. for Summ. Affirm. at 6 (emphasis added).

To the extent, however, that Petitioner's motion can be construed instead as seeking this Court itself to award interim fees, in the amount of the award made below (which Respondent did not itself contest by filing its own motion for review), *Avera* clearly provides that the special master *or* the Court of Federal Claims on review has authority to award interim fees. 515 F.3d at 1350, 1352.

The Special Master denied Petitioner's motion for interim fees, based on his analysis of the criteria established in *Avera*. Decision at *15-*17. He observed that this case resembles *Avera* in that, in both cases, the entitlement portion of the litigation had concluded and that neither petitioner "required an award of interim fees to continue to prosecute their respective claims for entitlement." *Id.* at *15. Both were, or are, seeking interim fees for the litigation to resolve the amount of the fees. He also noted that Petitioner's total claim for attorneys' fees and costs was less than the amount remaining in dispute in *Masias*, wherein the Special Master had indeed awarded interim fees of an uncontested portion. *Id.* at *17.

This Court declines to reverse the decision of the Special Master in his denial of interim fees. Whether reviewing the Special Master's decision or by the court's own authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 300aa-15(e)(1)(A) and (B), the inquiry is the same and is based on the guidance of the Federal Circuit in *Avera*. The decision whether to award interim fees is discretionary. As *Avera* held, "[t]he statute *permits* such awards." 515 F.3d at 1352 (emphasis added).

Petitioner requests instead, however, in place of the analysis suggested by *Avera*, that this Court develop "a rational and effective 'interim fees' doctrine," Pet'r's Reply to Resp't's Resp. at 2, in which, as soon as an award is liquidated, entitlement becomes clear and it would therefore be "an abuse of discretion to deny an interim award." *Id.* at 2-3. Petitioner urges that interim fees be paid "at the earliest time when entitlement can be found," and that "making such awards should be a ministerial act, not the end-product of an agonizing judicial process." *Id.* at 9. Although Petitioner makes a number of sound observations regarding the practical effects of the unsettled aspects of interim fees litigation (waiting often several years until the conclusion of the litigation to obtain an award diminishes the value of the award), his "Proposal for Reform," *id.* at 8-10, asking this Court to articulate better interim fees *policies* is beyond this Court's mandate. Petitioner opines that the Federal Circuit is "ill-equipped to craft interim fees

---

[4] The Court notes that Petitioner, in its motion for review, does not challenge the Special Master's denial of interim fees. The Special Master's denial, based on his analysis of the *Avera* criteria, was not arbitrary or capricious.

procedure," *id.* at 10, but so long as an award of interim fees is discretionary, this Court's charge under the statute is to determine whether the findings of the Special Master were arbitrary, capricious, an abuse of discretion, or not in accordance with the law. Because the Special Master is to be accorded broad discretion over attorneys' fees awards, the denial of interim fees is sustained.

        2. Fees for Fees

At the time that the Special Master issued his initial "final decision" on October 21, 2009, (prior to reconsideration), there was also pending Petitioner's October 6, 2009, formal Motion for Interim Award of Fees and Stay of Fees Decision Pending Dispositive Appeals. Respondent had responded to this motion on October 19, but Petitioner had not yet filed the reply brief. The issuance of the Special Master's decision on attorneys' fees and costs had the effect of precluding Petitioner's planned submission of a supplemental fees request for the costs incurred in litigating the underlying fee application itself, what may be termed "fees for fees."

When the Special Master granted reconsideration of his decision on attorneys' fees, it was only for the issue regarding the fees of Petitioner's former counsel. Nevertheless, Petitioner used the opportunity of reconsideration to renew his arguments on several matters that had been denied by the Special Master and included, for the first time, his application for fees for fees. The Special Master denied the application for those additional fees. "Fee applications should be as complete as possible when they are submitted. Disclosing the (full) amount requested promotes efficient administration of the fee application. . . . Similarly, judicial officers should not have to anticipate that additional fees will be requested for work that has already been filed." Decision at *12-*13. Citing *Sabella v. Sec'y of Health and Human Servs.*, 86 Fed. Cl. 201, 217 (2009), the Special Master advised that "[t]he October 21, 2009 decision adjudicated all the request for fees that were in the record." *Id.* at *13. Petitioner was not awarded compensation for the work of his counsel from April 1, 2009, through October 20, 2009, because by the time of the fees decision, he had "failed to ask for compensation for those activities."[5] *Id.*

In his motion before this Court for *de novo* adjudication of his final invoice, Petitioner argues that, in exercising its inherent authority to award costs and under its statutory authorization to award reasonable attorneys' fees as costs, the court is empowered to "do equity in a particular situation." Pet'r's Mot. for Summ. Affirm. at 8 (quoting *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939)). Petitioner advises that review of his invoice for these supplemental fees would be "straight-forward" and that 42 U.S.C. 300aa-15(e) gives the Court, not just the Special Master, authority to award fees. He concludes by observing that "a special master is a ministerial officer of the Court and has no power to disallow fees to the counsel for a prevailing party." *Id.* at 9.

Respondent notes, however, that Petitioner's application for these supplemental fees was untimely and that he had not satisfied the criteria for reconsideration before the Special Master. It argues, moreover, that his dissatisfaction with the Special Master's determination of the fees

---

[5] The Special Master did, however, award Petitioner one hour of compensation for Mr. Moxley's time attributed to filing the fee application of Petitioner's former counsel as requested by the Special Master in granting reconsideration. Decision at *13.

13

for fees issue is "not the proper basis for a motion seeking interim fees." Resp't's Resp. to Pet'r's Mot. for Summ. Affirm. at 9.

The Court finds that the decision of the Special Master in this regard was reasonable. Petitioner's fees for litigating the fees itself – from the initial application for fees to the reply to the Government's response to the October 6, 2009, motion for interim fees and a stay – could have been raised before October 21, 2009 (the Special Master's initial final decision on fees). The Court defers to the decision of the Special Master and will not grant Petitioner an award of his "fees for fees" application.

### C. Certification to Federal Circuit

Also outstanding is Petitioner's Renewed Motion for Certification to the Federal Circuit, in which he has identified four questions that he argues this Court should certify to the Federal Circuit because "the actual process of statutory 'review' by this Court, under 42 U.S.C. § 300aa-12(e), would be a waste of time and judicial resources." Pet'r's Mot. for Certification at 2. In a sense, then, Petitioner's argument for certification has been rendered moot, or at least obviated, by virtue of this Court's resolution herein of the underlying Motion for Review.

Petitioner acknowledges that the Federal Circuit's resolution of the appeal in *Masias* will control the resolution of the Special Master's hourly rate decision in this matter. *Id.* Because this Court's decisions are not "binding" on the Vaccine Program, he argues that "the gambit of certification is a salutary step" conducive to judicial efficiency, *id.* at 3, and posits four questions for certification. The questions concern: (1) the continued "vitality" of the "*Davis* exception" in *Avera* in light of the decision of the United States Supreme Court in *Richlin*; (2) whether profitability plays a role in determining "reasonable attorneys' fees"; (3) whether the *Laffey* Matrix is *prima facie* evidence of the forum rate for the District of Columbia; and (4) the extent to which interim fees should be awarded as a matter of course pending appeal of vaccine decisions, including fee adjudications. *Id.* at 3-4. "Even the interim fees application involves the issues presented in *Masias* (and by *Avera*) . . . ." *Id.* at 4.

In order to certify a question to the Federal Circuit, the Court of Federal Claims must find that there is a "controlling question of law" with respect to which there is "substantial ground for difference of opinion." 28 U.S.C. 1292(d)(2); *see, e.g., Avera v. Sec'y of Health and Human Servs.*, 75 Fed. Cl. 400, 405 (2007). Petitioner asserts that "the grounds are manifest in the instant case." Pet'r's Mot. for Certification at 4. He further argues that the "complexity analysis," in which he maintains the Department of Justice has "taken refuge" in order to "continue twenty years of economic oppression of its petitioners' bar," *id.* at 5; the inquiry into "windfall[s]" to petitioners' counsel; and the "developing split," *id.* at 7, within the Office of Special Masters over both the award of interim fees and the requirement or not for showing "hardship" militate in favor of certification.

In opposition, Respondent notes plainly that the statutory scheme of the Vaccine Act provides no authority for, and is incompatible with, interlocutory review as set out in 42 U.S.C. § 300aa-12(e). It notes that when the Court of Federal Claims hears motions for review, it is already "sitting in an intermediate appellate capacity." Resp't's Resp. to Pet'r's Mot. for

Certification at 4. "As such, an interlocutory appeal at this stage would serve no purpose since the case is already on appeal." *Id.* Interlocutory appeal from decisions of a special master are not available to the Court of Federal Claims; it would be, according to Respondent, odd and unjustified to allow interlocutory appeal once the case has been "reduced to appellate-style legal issues at the Court of Federal Claims." *Id.* at 4-5.

Petitioner's repeated observations that the decisions of this Court are not binding, coupled with his recognition that the issues herein are largely already before the Federal Circuit in *Masias* ("full and binding appellate review in an Article III tribunal is already in progress," Pet'r's Reply in Support of Mot. for Certification at 3), render sufficiently obvious the disutility of certification of these questions. This Court's role in the scheme of the Vaccine Act has been to determine whether the decision of the Special Master on Petitioner's attorneys' fees and costs application was arbitrary, capricious, an abuse of discretion, or contrary to law. It would have been irresponsible, if not statutorily inappropriate, to have taken a pass on this duty. Accordingly, Petitioner's motion for certification is denied.

V. Conclusion

The Court finds that the Special Master considered the relevant evidence, drew plausible inferences, and articulated a rational basis for his decision. Petitioner's motion for review is denied.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge